United States District Court
Southern District of Texas
**ENTERED**
August 30, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RICKY CLAY JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00152 |
| | § | |
| BOBBY LUMPKIN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CASE

Plaintiff Ricky Clay Jones, a Texas inmate appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915A.

For the reasons set forth below and pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the undersigned respectfully recommends that:

- Plaintiff's claims for money damages against **Bobby Lumpkin, S. Sanchez, and H. M. Pederson** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment;

- Plaintiff's Fourteenth Amendment due process claim against **Bobby Lumpkin** in his supervisory capacity, related to the deprivation of a property interest, be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief;

- Plaintiff's Fourteenth Amendment due process claim, related to the deprivation of a property interest, be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief; and

- Plaintiff's claims against **Bobby Lumpkin, S. Sanchez and H. M. Pederson**, related to Plaintiff's grievances and the grievance process, be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

The undersigned respectfully recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g)[1] and that the Court enter final judgment.

## I.   JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.   BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is housed at the Torres Unit in Hondo, Texas.  Plaintiff's allegations reference events that occurred while he was housed at the Torres Unit.

### A.   Plaintiff's § 1983 Action

Plaintiff filed his original complaint in the Unites States District Court for the Western District of Texas, San Antonio Division.  (D.E. 1). Plaintiff named the following defendants: (1) TDCJ Director Bobby Lumpkin ("Director Lumpkin"); (2) H. M. Pederson ("Pederson"), employed at the Region IV office in Beeville, Texas; and (3) S. Sanchez ("Sanchez"), the Assistant Regional Director at the Region IV office (collectively, "Defendants").  (D.E. 1, pp. 1,

---

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury.  *See* 28 U.S.C. § 1915(g).

3).  Plaintiff generally claimed that his constitutional rights were violated when "state officials" improperly took money from his inmate trust fund account, which left him without funds to purchase a fan during the summer of 2022.  (D.E. 1, pp. 3-4).  Plaintiff sought compensatory damages, punitive damages, and injunctive relief in the form of stopping state officials "from unlawfully taking other inmates['] money."  (D.E. 1, p. 4).

San Antonio Senior District Judge Fred Biery ordered Plaintiff to show cause why his complaint should not be dismissed for failure to state a claim by filing an amended complaint to cure noted certain deficiencies. (D.E. 4). In particular, Judge Biery advised Plaintiff that: (1) his claims were vague and conclusory; (2) he failed to demonstrate Pederson and Sanchez were personally liable for violating his constitutional rights; (3) he failed to state a constitutional violation insofar as the negligent or intentional deprivation of property by state officials does not rise to the level of a due process violation because Texas law provides adequate post-deprivation remedies; and (3) he failed to state a constitutional violation with respect to his claim that Pederson denied his grievance because prisoners do not have a liberty interest in having their grievances addressed and resolved to their satisfaction.  (D.E. 4, pp. 5-7).

## B.    Plaintiff's Amended Complaint and Transfer Order

Plaintiff filed an amended complaint against Defendants, seeking the same relief sought in the original complaint.  (D.E. 5).  In his amended complaint, Plaintiff appeared to raise the following claims:

- Defendants violated his Eighth Amendment rights by allowing money to be wrongfully taken from his inmate trust account so that he could not purchase a fan.  Plaintiff asserts that, even though Defendants were aware of the triple-digit temperatures and the heat conditions in lockdown for the

thirty-day period, they took no action to investigate his grievances and verify whether Plaintiff had a fan in his cell.  (D.E. 5, pp. 4-5, 9-10, 13).

- Director Lumpkin should be held responsible for depriving Plaintiff of property – funds in his inmate trust fund account – in violation of his Fourteenth Amendment rights.  (D.E. 5, pp. 4-6, 8).

- Defendants are liable in their official capacities by taking actions under an unconstitutional grievance policy in which Director Lumpkin was the final policymaker.  (D.E. 5, p. 12).

- Defendants' conduct amounts to negligent infliction of emotion distress in violation of Texas law,  alleging that he was forced to be confined in lockdown for the entire month of August 2022 without a fan where temperatures ranged from 100 to 115 degrees.  (D.E. 5, p. 14).

On June 6, 2023, Judge Biery transferred this action to the Corpus Christi division of this Court.  (D.E. 6).  In his transfer order, Judge Biery determined:

In this case, Plaintiff purports to sue [Pederson] and [Sanchez]—who are employed at the Beeville Unit—for acts that allegedly occurred in Bee County. Accordingly, this action could have been brought in the Southern District of Texas—Corpus Christi Division, given that this is where most of the Defendants reside and in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). Further, in the event of an evidentiary hearing or trial, it will be more convenient for a majority of the witnesses to travel there. Therefore, for the convenience of the parties and witnesses, this case should be transferred to the Southern District of Texas—Corpus Christi Division.

(D.E. 6, p. 3).

## C.   *Spears* Hearing and Plaintiff's Allegations

On July 26, 2023, the undersigned conducted a *Spears*[2] hearing where Plaintiff was given an opportunity to explain his claims.  The following representations were made either in

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Plaintiff's amended complaint (D.E. 5) or at the *Spears* hearing.  Plaintiff was fifty-four years old at the time of the hearing.  (D.E. 13, p. 9).  Plaintiff arrived at the Torres Unit in February 2022 and has been housed continuously there since his arrival.  (D.E. 13, pp. 12-13).

Plaintiff's testimony at the *Spears* hearing reflects that he owed TDCJ money of an unspecified amount.  (D.E. 13, p. 20).  While providing no testimony identifying his exact obligations, Plaintiff's grievances attached to his original complaint reflect that he owed money on indigent postage charges, a replacement ID card, and UTMB medical copay charges.  (D.E. 1, pp. 9, 11).

Plaintiff's daughter sent Plaintiff $40.00 in December 2021 and $40.00 in May 2022.  (D.E. 5, p. 6; D.E. 13, pp. 15-16).  According to Plaintiff, "[t]he State took 100% of these funds" in violation of Texas Government Code §§ 501.014 and 501.063.[3]  (D.E. 5, p. 6).  (*Id.*).  Plaintiff alleges that, if an inmate has an unpaid balance owed to the TDCJ, these provisions provide that the inmate shall pay the unpaid balance out of his inmate trust find account.  (D.E. 5, p. 6).  Plaintiff alleges further that, if he has insufficient funds to pay the balance of his amounts owed, Section 501.063 requires only that 50% of each deposit to the trust fund account to be applied to the unpaid balance until the total amount owed is paid.  (D.E. 5, p. 6).  As a result of the State

---

[3] Section 501.014 of the Texas Government Code pertains to inmate money and the TDCJ's authority to establish inmate trust fund accounts.  Section 501.063 of the Texas Government Code, in turn, provides in pertinent part:

(a)(1) An inmate confined in a facility operated by or under contract with the department, other than a halfway house, who initiates a visit to the health care provider shall pay a health care services fee to the department in the amount of $13.55 per visit, except that an inmate may not be required to pay more than $100 during a state fiscal year.

(2) Repealed by Acts 2019, 86th Leg., ch. 1046 (H.B. 812), § 2.

(3)  The inmate shall pay the fee out of the inmate's trust fund.  If the balance in the fund is insufficient to cover the fee, 50 percent of each deposit to the fund shall be applied toward the balance until the total amount is paid.

taking all of monies deposited by his daughter, Plaintiff was left with nothing in his trust fund account statement in 2021 and 2022.  (D.E. 5, p. 7).

Plaintiff alleges that he could not identify the specific official who directed his funds to be taken from his account, which prevented him from purchasing a fan during the summer of 2022.  (D.E. 13, p. 22).  Plaintiff filed Step 1 grievances in the Spring of 2022, complaining about the money taken from his inmate trust fund account as well as his inability to purchase a fan without any funds left in his account. (D.E. 13, pp. 17-18, 25). Because the Torres Unit does not have a Unit Grievance Investigator, Plaintiff's Step 1 grievances were handled by Sanchez from Beeville's Region IV office.  (D.E. 5, p. 7, D.E. 13, p. 25).  According to Plaintiff, it took over 180 days to receive responses to his grievances, which instead should have been answered within thirty days pursuant to unspecified administrative directives.  (D.E. 13, pp. 18, 30).

In a Step 1 grievance dated June 3, 2022 (Grievance No. 2022109954), Plaintiff complained about having a zero balance in his inmate trust fund account following receipt of his daughter's $40.00 deposit and that monies were taken from his account in violation of Section 501.063.  (D.E. 1, pp. 8-9).  Sanchez denied Plaintiff's Step 1 grievance on July 11, 2022, finding that: (1) deposits were made into Plaintiff's accounts on December 13, 2021 and May 24, 2021; (2) since December 2021, there were indigent postage charges to Plaintiff's account with some of the amount collected on May 24, 2022; (2) Plaintiff was charged with a replacement ID in February 2022, with the amount collected on June 10, 2022; and (3) Plaintiff's medical charges owed from November 5, 2021 and November 11, 2021, with the amount collected on May 24, 2022.  (D.E. 1, p. 9; D.E. 13, pp. 17, 23, 25).  Sanchez determined that Plaintiff's "[b]alance was correct at the time of the incident."  (D.E. 1, p. 9).

Plaintiff's Step 2 grievance (Grievance No. 2022109954) is dated July 24, 2022.  (D.E. 1, pp. 6-7).  In rejecting Plaintiff's Step 2 grievance on December 12, 2022, Pederson determined that "the fees collected from [Plaintiff's] account were done in accordance with agency policy and state law."  (D.E. 1, p. 7; D.E. 13, pp. 18, 23, 25).  Pederson further noted that "an inmate trust fund account is held under the authority of TDCJ" and that "[t]he agency may decide what funds shall be deposited and withdrawn."  (D.E. 1, p. 7).

Plaintiff's allegations in his amended complaint and *Spears* hearing testimony reflect that, during the month of August 2022 when he was confined in lockdown, temperatures routinely exceeded 100 degrees.  (D.E. 5, p. 5; D.E. 13, p. 28).  Plaintiff, however, testified at his *Spears* hearing that he does not seek to bring claims related to excessive heat as part of this lawsuit. (D.E. 13, p. 29).  Plaintiff further acknowledges that: (1) his claims pertain only to his "constitutional right to [his] money" and are not based on any theory he has a constitutional right to a fan; (2) he never sought to recover any monies taken from his account through a state lawsuit; and (3) he currently has a fan in his cell.  (D.E. 13, pp. 19, 21, 27).

### D.    Plaintiff's Claims

Given Plaintiff's representations at the *Spears* that his claims only pertain to his purported constitutional right to the monies in his inmate trust find account and that claims related to excessive heat at the Torres Unit or the right to a fan are not part of this lawsuit, [4] the undersigned finds that he seeks to raise the following claims in this action:

---

[4] As Plaintiff affirms he is not pursuing his claims related to the excessive heat conditions, including his related state law claim for negligent infliction of emotional distress, the undersigned will not consider them as part of this action.  Any claim regarding excessive heat conditions at the Torres Unit would need to be brought in a separate action filed in the appropriate court, which would be the Western District of Texas, San Antonio Division.

- Sanchez and Pederson violated Plaintiff's constitutional rights by taking no action to investigate his grievances, in which he complained about monies taken from his inmate trust fund account. In connection with his claim, Plaintiff asserts that each defendant is liable in his official capacity by taking actions under an unconstitutional grievance policy in which Director Lumpkin was the final policymaker.

- Director Lumpkin, or some unidentified TDCJ official, improperly deprived Plaintiff of funds in his inmate trust fund account in violation of his Fourteenth Amendment procedural due process rights.

## III.   GOVERNING LAW

### A.   Legal Standard for Screening of Plaintiff's Action

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

## B.    Relevant law regarding 42 U.S.C. § 1983

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983).   There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).  A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

## IV.    DISCUSSION

### A.    Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998).  As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment.  Thus, the undersigned recommends that Plaintiff's claims for money damages against Defendants in their official capacities be **DISMISSED** without prejudice.[5]

### B.    Deprivation of Property Interest

Plaintiff claims that Director Lumpkin, or some unidentified TDCJ official, improperly deprived Plaintiff of funds in his inmate trust fund account in violation of his Fourteenth Amendment procedural due process rights.  Plaintiff appears to name Director Lumpkin on this claim because he could not identify the specific TDCJ official who actually directed the withdrawal of the disputed funds from his account.

Plaintiff's allegations suggest only that he seeks to sue Director Lumpkin in his supervisory or administrative capacity.  Plaintiff's alleges no specific facts to suggest Director Lumpkin had any personal involvement with respect to the deduction of funds from his account. "Absent any personal involvement in a constitutional violation, supervisory liability cannot state a claim under Section 1983." *Beckett v. University of Texas Medical Branch-TDCJ Managed Care*, No. 3:17-CV-0168, 2018 WL 4491340, at *5 (S.D. Tex. Sep. 19, 2018) (citing *Porter*, 659 F.3d at 448). Accordingly, the undersigned recommends that Plaintiff's Fourteenth Amendment due process claim for deprivation of property interest against Directory Lumpkin in his

---

[5]  Claims implicating the Eleventh Amendment are subject to dismissal without prejudice because the Eleventh Amendment deprives the Court of subject matter jurisdiction.  *See Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) (observing that "the Eleventh Amendment generally deprives federal courts of jurisdiction" over certain suits); *United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) ("While the Supreme Court has left this question open, [the Fifth Circuit] has repeatedly referred to the Eleventh Amendment's restriction in terms of subject matter jurisdiction.")

supervisory capacity be dismissed with prejudice.  As detailed below, Plaintiff's underlying due process claim is subject to dismissal such that it is unnecessary for the Court to direct Plaintiff to amend his complaint further and identify the official responsible for ordering the deduction of funds from his account.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiff's due process claim depends upon the existence of a property interest. *See, e.g., Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

"[W]hen inmates are afforded the opportunity, whether by 'right' or 'privilege,' to possess personal property, they enjoy a protected interest in that property that cannot be infringed without due process." *McCrae v. Hankins*, 720 F.2d 863, 869 (5th Cir. 1983) (citing *Parratt v. Taylor*, 451 U.S. 527, 536 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)).  An inmate specifically retains a property interest in his or her inmate trust fund account that is protected by due process requirements.  *See Rosin v. Thaler*, 417 F. App'x 432, 434 (5th Cir. 2011) ("A prisoner has a protected property interest in the funds in his prison account."); *Abdullah v. State*, 211 S.E.3d 938, 943 (Tex.App. – Texarkana 2007) (same); *Brewer v. Collins*, 857 S.W.2d 819, 923 (Tex. App. — Houston [1st Dist.] 1993, no writ) (same).

"Due-process requirements for deprivations caused by state officials' authorized conduct are different from those caused by officials' unauthorized conduct."  *Waddleton v. Collier*, No. 4:18-4015, 2022 WL 254625, at *5 (S.D. Tex. Jan. 27, 2022) (Hanks, J.).  When the deprivation

of property is authorized by an official policy, an inmate must be afforded some form of notice and an opportunity to be heard.  *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

On the other hand, "when officials engage in random and unauthorized conduct depriving an inmate of property, the deprivation is not foreseeable by the State and pre-deprivation process if impractical." *Waddleton*, 2022 WL 254625, at *5.  Thus, "if state law provides an adequate post-deprivation remedy, a negligent or intentional deprivation of property by state officials' random and unauthorized action does not rise to the level of a constitutional violation." *Beckett*, 2018 WL 4491340, at *4  (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Parratt*, 451 U.S. at 541 (holding that a prison officials' negligent loss of an inmate's property was properly remedied by post-deprivation procedures).

A review of Plaintiff's allegations appears to indicate that some of the funds taken from his account following his daughter's deposits may have been unauthorized under Section 501.063 of the Texas Government Code.  However, in a Step 2 grievance attached to his original complaint, Pederson explains that all of the withdrawals from his account in satisfaction of obligations for medical co-pay charges, indigent stamps, and his registration ID, were in fact authorized under existing agency policy and state law.  (D.E. 1, p. 7).  Regardless of whether the funds taken from his inmate trust fund account were authorized under an official policy or unauthorized, Plaintiff has failed to state a Fourteenth Amendment procedural due process claim.

Section 501.063 of the Texas Government Code requires inmate with the requisite financial means to pay $13.55 per visit to a health care provider with the exception that such requirement not exceed $100 during a state fiscal year.  TEX. GOV'T CODE 501.063(a)(1). If the inmate has insufficient funds to cover the medical co-pay fee, only 50 percent of each deposit

to his inmate trust fund account shall be applied toward the balance of the total amount owed. TEX. GOV'T CODE 501.063(a)(3).

Plaintiff's allegations, accepted as true, suggest that he had insufficient funds to cover his medical co-pay obligations and that monies taken from his inmate trust fund account exceeded 50 percent of his daughter's two $40.00 deposits to satisfy these charges.   Assuming that such deductions from Plaintiff's account to pay his medical co-pay charges were wrongful and unauthorized pursuant to Section 501.063, Plaintiff cannot state a  due violation due to the availability of state post-deprivation remedies. *See Mann v. Davis*, No. 6:16cv1315, 2021 WL 5087099, at *5 (E.D. Tex. Apr. 12, 2021).   "Texas provides inmates challenging the appropriation of monies in their inmate trust fund account 'with meaningful postdeprivation remedies, either through statute or through the tort of conversion.'"   *Hawes v. Stephens*, 964 F.3d 412, 418 (5th Cir. 2020) (quoting *Washington v. Collier*, 747 F. App'x 221, 222 (5th Cir. 2018)).

Here, Plaintiff acknowledges that he did not file a state court case seeking to recover monies wrongfully taken from his inmate trust fund account.  (D.E. 13, p. 21).  Because Plaintiff has available post-deprivation remedies to challenge any alleged unauthorized taking of monies from his account, no actionable due process violation has occurred in connection with such conduct.  *See Mann*, 2021 WL 5087099, at *5-6; *see also Beckett*, 2018 WL 4491340, at *4 (holding that claim for the wrongful taking of money from his inmate trust fund account under

Section 501.063 is "not actionable under 42 U.S.C. § 1983 and is legally unfounded" because of the existence of state post-deprivation remedies).[6]

As noted above, however, Plaintiff attached a Step 2 grievance suggesting that all of the deductions from his account in 2022, to satisfy obligations for medical co-pay charges, indigent stamps, and his registration ID, were authorized under existing state rules and policies. (D.E. 1, p. 7). Even assuming that all of the challenged deductions from Plaintiff's inmate trust account were authorized under official policies, he still cannot state a Fourteenth Amendment procedural due process claim.

The Supreme Court in *Zinermon* recognizes that Plaintiff must be afforded notice and an opportunity to be heard for authorized deprivations of property. *Zinermon*, 494 F.3d at 127-28. TDCJ has a formal two-step administrative grievance process. *See* Tex. Admin. Code § 283.3 (Inmate Grievance Plan); *see also Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (outlining both steps of the TDCJ grievance process that an inmate must complete to exhaust administrative remedies).

The Fifth Circuit, in at least two unpublished decisions, has concluded that the TDCJ's grievance procedures are adequate to afford due process with respect to the authorized confiscation of inmate property as contraband. *See McQueen v. Vance*, 68 F.3d 471, 1995 WL 581861 at *1 (5th Cir. 1995) (per curiam) ("TDCJ's post-deprivation grievance procedures are adequate to satisfy the Due Process Clause.") (citing *McBride v. Collins*, 15 F.3d 181, 1994 WL 24960 at *1 (5th Cir. 1994) (per curiam) (concluding that a prisoner received due process through

---

[6] To the extent Plaintiff claims that the medical co-pay charges were deducted in violation of TDCJ rules or policies, such an allegation fails to state a claim for relief because a prison official's failure to follow prison rules or policies is not itself a constitutional violation. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

the TDCJ grievance process and that any interest he may have had in the altered item seized from his cell was outweighed by the prison's "strong interest in regulating prisoners' property and in suppressing contraband")).  District courts considering these decisions have likewise held that "[p]ost-deprivation proceedings such as TDCJ's grievance procedures are adequate to satisfy the Due Process Clause with respect to confiscation of property pursuant to prison regulations." *Evans v. Baker*, No. 2:10-cv-00226, 2010 WL 5817654, at *3 (N.D. Tex. Oct. 25, 2010), *report and recommendation adopted as modified*, 2011 WL 610968 (N.D. Tex. Feb. 17, 2011), *aff'd*, 442 F. App'x 108 (5th Cir. 2011) (per curiam); *see also Matez v. Foley*, No. 2:17-cv-00134, 2020 WL 2926464, at *4 (N.D. Tex. June 3, 2020) (concluding that post-deprivation grievance procedures afford a prisoner with "ample notice and sufficient opportunity to object to the confiscation of his property[.]").

Here, in a similar vein,  Plaintiff challenges the authorized taking of monies from his inmate trust fund account pursuant to certain state rules and policies.  Exhibits attached to Plaintiff's original complaint show that, through both Step 1 and Step 2 grievances, Plaintiff had the opportunity to contest the taking of funds from his property following his daughter's deposits into his inmate trust fund account.  (D.E. 1, pp. 6-9).  Sanchez responded to Plaintiff's Step 1 grievance by providing a detailed account as to the amounts collected from Plaintiff's account following his daughter's deposits to satisfy his various obligations.  (D.E. 1, p. 9).  After Plaintiff was able to appeal with a Step 2 grievance, Pederson explained that TDCJ has the requisite authority to decide what funds may be deposited and withdrawn from an inmate's account and that "the fees collected  from [Plaintiff's] account were done in accordance with agency policy and state law."  (D.E. 1, p. 7).

Even though Plaintiff did not prevail in the grievance process, his grievance records attached to his original complaint demonstrate that officials provided him with notice and an opportunity to be heard on his challenges to the monies deducted from his account.  *See Evans v. Baker*, 442 F. App'x 108, 110 (5th Cir. 2011) (recognizing that inmate "received the due process protections required when he received notice of the basis for the confiscation of the subject property and a fair opportunity to rebut the allegations concerning his ownership of the property at the [disciplinary] hearing and in his grievances"); *Waddleton*, 2022 WL 254625, at *6 (dismissing inmate's procedural due process claim challenging his request to withdraw funds from his inmate account for failure to state a claim for relief because his grievances records attached to his complaint established that prison officials had "provided him notice and an opportunity to be heard").  Accordingly, the undersigned recommends that Plaintiff's Fourteenth Amendment due process claim – based on the deprivation of a property interest concerning the taking of monies from his inmate trust fund account – be **DISMISSED** with prejudice for failure to state a claim for relief.

### C.      Grievances and the Grievance Process

Plaintiff claims that: (1) Sanchez and Pederson violated Plaintiff's constitutional rights by taking no action to investigate his grievances, in which he complained about the monies taken from his inmate trust fund account; (2) Sanchez and Pederson each took an inordinate amount of time to resolve his grievances in violation of certain administrative directives requiring responses within thirty days; and (3) Sanchez, Pederson, and Director Lumpkin are liable in their official capacities by taking actions under an unconstitutional grievance policy in which Director Lumpkin was the final policymaker.  (D.E. 13, pp.

Plaintiff's allegations, accepted as true, fail to suggest that either Sanchez or Pederson had any personal involvement in connection with the decision to take all his daughter's two deposits totaling $80.00 from his inmate trust fund account. Rather, Plaintiff's claims pertain only to their role in handling Plaintiff's Step 1 and Step 2 grievances, which is insufficient "to establish their involvement in the allegedly offending conduct itself." *See DeRouen v. Aransas Cnty. Detention Center*, No. 2:22-CV-00292, 2023 WL 3232622, at (S.D. Tex. Mar. 20, 2023) (Neurock, J.), *recommendation adopted*, 2023 WL 3230496 (S.D. Tex. May 3, 2023) (Ramos, J.).

The Fifth Circuit Court of Appeals has held that a prisoner does not have a constitutional right to a grievance procedure at all. *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011) (citing *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005)). Thus, it follows that a prisoner does not have any federally protected liberty interest in having grievances resolved to his or her satisfaction. *See Geiger*, 404 F.3d at 374 (because "[plaintiff] does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction . . . any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.").

Plaintiff, therefore, fails to state any constitutional claim against Sanchez or Pederson in their individual capacities regarding their respective alleged failures to decide Plaintiff's grievances in a timely manner or resolve Plaintiff's grievances in his favor. As inmates have no constitutional right to a grievance procedure at all, Plaintiff's claims against Director Lumpkin, Sanchez, and Pederson in their official capacities likewise fail with regard to their alleged implementation of an unconstitutional grievance policy where Director Lumpkin is the final

policymaker. Accordingly, the undersigned respectfully recommends that these claims be **DISMISSED** with prejudice as frivolous and/or for failure to state a claim for relief.

### D.   Conclusory and Unsupported Factual Allegations

To ensure justice and access to the courts, courts interpret pleadings of *pro se* litigants liberally. *See United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996) (citing *United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983)). *Pro se* actions will not be dismissed based on technical pleading defects and should be construed to ensure such claims are given fair and meaningful consideration despite the unrepresented litigant's unfamiliarity with the law. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (*Pro se* parties are normally accorded more leniency in the construction of their pleadings).

To give Plaintiff's claims fair and meaningful consideration, the undersigned has liberally construed Plaintiff's original and amended complaints as well his *Spears* hearing testimony. The undersigned has attempted to articulate and analyze Plaintiff's claims in an impartial manner consistent with providing appropriate leniency to *pro se* litigants while at the same time complying with applicable pleading and screening standards. To the extent Plaintiff is attempting to raise a claim not specifically addressed by the undersigned in this Memorandum and Recommendation, Plaintiff has failed to state such claim with sufficient factual detail or clarity to allow the claim to be identified or analyzed by the Court.

As stated previously, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Again, Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference

that Defendant is liable. *Id.*; *Twombly*, 550 U.S. at 556. Further, the factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. Therefore, Plaintiff is advised that any claim not addressed in this Memorandum and Recommendation is not currently before this Court because Plaintiff has failed to allege sufficient facts or state such claims clearly.

## V.   RECOMMENDATION

For the reasons stated above and pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the undersigned respectfully recommends that:

- Plaintiff's claims for money damages against **Bobby Lumpkin, S. Sanchez, and H. M. Pederson** in their official capacities be **DISMISSED without prejudice** as barred by the Eleventh Amendment;

- Plaintiff's Fourteenth Amendment due process claim against **Bobby Lumpkin** in his supervisory capacity, related to the deprivation of a property interest, be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief;

- Plaintiff's Fourteenth Amendment due process claim, related to the deprivation of a property interest, be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief; and

- Plaintiff's claims against **Bobby Lumpkin, S. Sanchez and H. M. Pederson**, related to Plaintiff's grievances and the grievance process, be **DISMISSED with prejudice** as frivolous and/or for failure to state a claim for relief.

The undersigned respectfully recommends further that the dismissal of this case count as a "strike" for purposes of 28 U.S.C. § 1915(g), and that the Clerk of Court be INSTRUCTED to send notice of this dismissal to the Manager of the Three Strikes List for the Southern District

of Texas at Three_Strikes@txs.uscourts.gov. Finally, the undersigned recommends the Court

enter Final Judgment and dismiss this action.

      Respectfully submitted on August 30, 2023.

                                      Jason B. Libby

                             United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).